UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

MITCHELL FOX and KATHERINE
MAURER FOX,

     Plaintiffs,

   - against -

STEVEN MESZAROS, PENTA-CYCLE
GROUP INC., a/k/a PENTA-CYCLE GROUP
LLC, PAUL UMANSKY and JPR CAPITAL
CORP.,

     Defendants.

---------------------------------------------------------X

**CV 07 2811**

07 CIV

(si)

**COMPLAINT**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 1 1 2007   ★

LONG ISLAND OFFICE

BIANCO, J.

BOYLE, M.J.

  Plaintiffs Mitchell Fox and Katherine Maurer Fox, by and through their attorneys,

Law Offices of Bart J. Eagle, PLLC, for their complaint, state as follows:

## NATURE OF ACTION

  1. This complaint sets forth claims for (a) fraud in the sale of securities and in

connection with the provision of investment advisory services respecting securities

transactions in violation of 15 U.S.C. §78j(b) and Rule 10b-5 thereunder;  (b) common

law fraud;  (c) conversion and misappropriation by the defendants of money and other

assets of the plaintiffs; (d)  breach of fiduciary duty;  (e) breach of agreement;  (f) liability

pursuant to *respondeat superior*;  (g) control person liability under 15 U.S.C. §78t(a) and

Rule 10b-5 thereunder;  and (e) punitive damages.

## JURISDICTION AND VENUE

2.     This court has jurisdiction over these claims by virtue of §27 of the Securities Exchange Act of 1934 (15 U.S.C. §78aa) and 28 U.S.C. §§1331, 1337 and 1367.

3.     Venue is predicated upon 15 U.S.C. §78aa and 28 U.S.C. §1391(b)(c).

## THE PARTIES

4.     At all times relevant hereto, plaintiff Mitchell Fox was a resident of the State of New York, County of Nassau.

5.     At all times relevant hereto, plaintiff Katherine Maurer Fox was a resident of the State of New York, County of Nassau.

6.     Upon information and belief, at all times relevant hereto, defendant Steven Meszaros ("Meszaros") was a resident of the State of New York, County of Nassau.

7.     Upon information and belief, at all times relevant hereto,  defendant Penta Cycle Group Inc. a/k/a Penta-Cycle Group LLC (referred to hereafter collectively and interchangeably as, "Penta Cycle"), was either, respectively, a corporation organized pursuant to the laws of the State of New York or a limited liability company organized pursuant to the laws of the State of New York, with its principal place of business located in the County of Nassau, State of New York.

8.     Upon information and belief, at all times relevant hereto, defendant Paul Umansky ("Umansky") was a resident of the State of New York, County of Nassau.

9.     Upon information and belief, at all times relevant hereto, defendant JPR Capital Corp. ("JPR") was a corporation organized pursuant to the laws of the State of

New York, with its principal place of business located in the State of New York, County of Nassau.

10.     Upon information and belief, from the formation of Penta Cycle through and including the present, defendant Meszaros was the president and/or sole shareholder and/or sole member and managing member of defendant Penta Cycle.

11.     Defendant Meszaros represented to the plaintiffs, in substance, that since the formation of Penta Cycle, he was conducting business through defendant Penta Cycle and was managing a lot of people's money through Penta Cycle.

12.     Upon information and belief, at all times relevant hereto since its formation, defendant Penta Cycle was engaged in the securities business including, without limitation, as an investment fund and advisor, holding out its services to the general public as such.

13.     Upon information and belief, at all times relevant hereto, defendant Meszaros was a registered stock or securities broker.

14.     Upon information and belief, at all times relevant hereto, defendant JPR was engaged in the securities business including, without limitation, as a registered stock or securities brokerage firm holding out his services to the general public as such.

15.     Upon information and belief, at all times relevant hereto, defendant Umansky was the principal and majority shareholder and president of JPR.

16.     Upon information and belief, at all times relevant hereto, defendant Meszaros was an account executive and/or financial advisor, employed by or otherwise affiliated with JPR.

17.    Upon information and belief, at all times relevant hereto, defendant Meszaros was supervised by defendant Umansky.

18.    Upon information and belief, at all times relevant hereto, defendant Umansky had a duty to supervise defendant Meszaros.

19.    Upon information and belief, at all times relevant hereto, defendant Umansky, directly or indirectly, controlled the actions of defendant Meszaros.

20.    Upon information and belief, at all times relevant hereto since the formation of Penta Cycle, defendants Penta Cycle and JPR shared offices at the same premises.

21.    Upon information and belief, at all times relevant hereto, defendants Meszaros and/or Penta Cycle maintained all of their trading accounts at defendant JPR.

22.    Upon information and belief, at all times relevant hereto, defendants Meszaros and/or Penta Cycle executed all of their securities transactions through JPR and JPR's clearing broker, Southwest Securities, Inc. ("Southwest")

23.    Upon information and belief, at all times relevant hereto since the formation of defendant Penta Cycle, defendant Penta Cycle was, or claimed to be, a preferred shareholder of defendant JPR, which relationship was not revealed to the plaintiffs until after the plaintiffs had demanded the return of the full balance of their account.

## THE FACTS

24.    Upon information and belief, "Day Trading" is a stock trading strategy whereby traders attempt to profit from changes in the prices of securities by buying and selling high volumes of securities within a very short period of time.

complaint                                                         4

25.    Upon information and belief, at all times relevant hereto, defendants Meszaros, JPR and Umansky, and, since its formation, Penta Cycle, were engaged in Day Trading.

26.    At all times relevant hereto, defendant Meszaros and the plaintiffs lived near one another;  were friendly acquaintances;  had daughters, who were the same age, friendly, and attended the same school;  and saw each on occasion, including at events at a local school that their respective daughters attended.

27.    In or about September, 2002, defendant Meszaros advised plaintiff Mitchell Fox that he was a broker in the business of Day Trading for high net worth individuals, stated that the minimum account values of each of his clients was $1,000,000, described to plaintiff Mitchell Fox what Day Trading was, and stated, in substance, that his Day Trading clients make money regardless of how the market performs.

28.    Upon information and belief, at the time defendant Meszaros made the aforementioned representations to plaintiff Mitchell Fox, Meszaros was employed by and/or otherwise affiliated with, and conducted business through, defendant JPR.

29.    At the time defendant Meszaros made the aforementioned representations to plaintiff Mitchell Fox, the plaintiffs had had no prior experience in Day Trading.

30.    Upon information and belief, defendant Meszaros knew that the plaintiffs had had no prior experience in Day Trading.

31.    On or about May 9, 2003, based, in part, on their relationship with defendant Meszaros,  the plaintiffs opened a securities trading account with defendant JPR, with defendant Meszaros as their account executive and financial advisor, for the

purpose of JPR and Meszaros engaging in Day Trading for the benefit of the plaintiffs, in consideration for which JPR would receive a percentage of the profits realized by the plaintiffs as a result thereof (the "JPR Agreement").

32.     Defendants Meszaros and JPR had discretionary authority to trade securities with respect to the plaintiffs' Day Trading account and controlled the plaintiffs' account.

33.  On or about May 9, 2003, the plaintiffs deposited the sum of $100,000.00 into said account for use by Meszaros and JPR in Day Trading for the benefit of the plaintiffs.

34.     While they maintained their account at JPR, the plaintiffs received account statements.

35.     The "Net Account Value" set forth on each of the JPR account statements received by the plaintiffs was less than the amounts that the plaintiffs had deposited into their JPR account as of the date of each statement.

36.     In conversations that took place after the plaintiffs had received their account statements during the time that they maintained their account at JPR, defendant Meszaros represented to the plaintiffs, in substance, that the Day Trading being engaged in by defendants Meszaros and JPR on the plaintiffs' behalf was realizing profits and that the value of the plaintiffs' account was increasing in value.

37.     After receiving each of the JPR statements, one or both of the plaintiffs asked defendant Meszaros to explain the JPR statement, how the "Net Account Value" for the last day of the statement period set forth on the statement was determined, and to explain why the said "Net Account Value" set forth on the particular statement was

less than the amount that they had invested as of the date of the statement and less than what should have been an even greater value if the account was, in fact, increasing in value, as defendant Meszaros had represented that it was.

38.     In response to the plaintiffs' questions concerning the JPR account statements and the "Net Account Value" stated therein, defendant Meszaros represented to the plaintiffs, in substance, that the statements were confusing;  that the confusing nature of the statements was the fault of JPR;  and that he (Meszaros) would walk the plaintiffs through the statements.

39.     In further response to the plaintiffs' questions concerning the JPR account statements and the "Net Account Value" stated therein, defendant Meszaros represented that the actual, full value of their account was greater than the "Net Account Value" for the last day of the statement period as set forth on the particular JPR statement;  that the said "Net Account Value" set forth on the JPR statement did not include the full value of securities purchased and held by JPR for the plaintiffs' account on the last day of the statement period;  and that to determine the actual, full value of their account on the last day of the statement period, the plaintiffs should add thirty (30%) percent of the value of the "Equities" set forth on the statement to the net account value set forth on the statement.

40.     At the time defendant Meszaros made the oral statements hereinabove described respecting the JPR statements and the actual, full value of their account, the plaintiffs believed that the defendant Meszaros' statements were truthful and accurate.

41.     The plaintiffs had no prior experience with statements for Day Trading accounts, did not understand the statements, and relied upon defendant Meszaros to explain the statements to them.

42.     Upon information and belief, the aforementioned representations of defendant Meszaros set forth in ¶¶36-9 above were false, were known by defendant Meszaros to be false, and were made by Meszaros, upon information and belief acting in concert with defendant Umansky, with the intention of deceiving the plaintiffs as to the actual value of their account, to hide losses and/or the conversion of funds, and to induce the plaintiffs to continue to deposit money into their account for the purpose of Day Trading, to not close their account and demand the return of their funds, and to not notify authorities and/or commence litigation with respect to the fraudulent actions and/or conversion of their funds.

43.     Unbeknownst to the plaintiffs at the time, the actual, full value of their account on the last day of the statement periods were not an amount equal to the net account value set forth on the statement plus thirty (30%) percent of the value of the "Equities" set forth on the statement,.

44.     Unbeknownst to the plaintiffs at the time, the Day Trading being engaged in by defendants Meszaros and JPR on the plaintiffs' behalf was realizing losses and the value of the plaintiffs' account was decreasing in value and/or the defendants were converting portions of the plaintiffs' funds.

45.     As a result of the aforementioned representations of defendant Meszaros set forth in ¶¶36-9 above, on or about February 27, 2004, the plaintiffs deposited the sum of $100,000.00 into said account for use by Meszaros and JPR in Day Trading for

the benefit of the plaintiffs, as hereinabove described, agreed to transfer their account to Penta Cycle, as hereinbelow described, made additional deposits into their account at Penta Cycle, as hereinbelow described, did not close their account at JPR until they transferred their account to Penta Cycle, did not close their account at Penta Cycle or demand the return of their funds until they learned of the investigation and indictment of defendant Meszaros by the United States Attorney for the Eastern District of New York, as hereinbelow described, did not notify authorities until they were interviewed by the United States Attorney's investigator, as hereinbelow described, and did not, until the commencement of this action, commence litigation with respect to the fraudulent actions and/or conversion of their funds.

46.     The JPR statement for the Statement Period May 31, 2005 to June 30, 2005 stated a "Net Account Value" of $187,673.41 on June 30, 2005 and the value of "Equities" as ($220,680.00).

47.     As of June 30, 2005, the plaintiffs had invested the sum of $200,000 into their JPR account.

48.     Defendant Meszaros represented to the plaintiffs that the actual, full value of their account on June 30, 2005 was $253,877.41, which he said was computed by adding thirty (30%) percent of the value of the "Equities" ($220,680), which would be $66,204, to the "Net Account Value" of $187,673.41.

49.     Unbeknownst to the plaintiffs at the time, the actual, full value of their account at JPR was not $253,877.41.

50.     Unbeknownst to the plaintiffs at the time, the Day Trading being engaged in by defendants Meszaros and JPR on the plaintiffs' behalf was realizing losses and

the value of the plaintiffs' account was decreasing in value and/or the defendants were converting portions of the plaintiffs' funds.

51.     In or about July, 2005, defendant Meszaros told the plaintiffs that he had started a new company, defendant Penta Cycle;  that he wanted the plaintiffs to transfer their account from defendant JPR to Penta Cycle;  that the transfer would benefit the plaintiffs in allowing Meszaros to trade for the plaintiffs for lower fees; and that everything else would remain the same  - the new company would be stepping into the place of JPR as the plaintiffs' financial advisor.

52.     On or about July 7, 2005, defendants JPR and Meszaros represented to the plaintiffs that the "Net Account Value" of the plaintiffs' account at JPR on that date was $187,544.56.

53     On or about July 7, 2005, defendant Meszaros represented to the plaintiffs that the difference between the $187,544.56 balance in their account at JPR, and the actual, full value of their account at JPR – which defendant Meszaros represented was the sum of $253,877.41 - was the value of securities belonging to the plaintiffs, which Meszaros would arrange to have transferred by JPR to Penta Cycle if the plaintiffs agreed to transfer their account to Penta Cycle.

54.     Upon information and belief, the aforementioned oral representations set forth in ¶¶46,48,51-3 above were false, were known by defendant Meszaros to be false, and were made with the intention of deceiving the plaintiffs as to the actual value of their account at JPR, to hide losses and/or the conversion of funds, and to induce the plaintiffs to enter into an agreement with and open an account with defendant Penta Cycle, transfer the assets in their JPR account to a new Penta Cycle account, and

deposit additional money into their Penta Cycle account for the purpose of Day Trading, to not close their account and demand the return of their funds, and to not notify authorities and/or commence litigation with respect to the fraudulent actions and/or conversion of their funds.

55.     Unbeknownst to the plaintiffs at the time, the actual, full value of their account at JPR was not $253,877.41.

56.     Unbeknownst to the plaintiffs at the time, the Day Trading being engaged in by defendants Meszaros and JPR on the plaintiffs' behalf was realizing losses and the value of the plaintiffs' account was decreasing in value and/or the defendants were converting portions of the plaintiffs' funds.

57.     The plaintiffs relied upon the aforementioned representations set forth in ¶¶36-9 and ¶¶46,48,51-3 above and, in or about July, 2005, entered into an agreement and opened an account with defendant Penta Cycle, transferred the assets in their JPR account to their new Penta Cycle account, deposited additional money into their Penta Cycle account for the purpose of Day Trading, as hereinabove and hereinbelow described, did  not close their account and demand the return of their funds until they learned of the investigation and indictment of defendant Meszaros by the United States Attorney for the Eastern District of New York, as herein below described, did not notify authorities until they were interviewed by the United States Attorney's investigator as herein below described, and did not, until the commencement of this action, commence litigation with respect to the fraudulent actions and/or conversion of their funds.

58.     Based upon defendant Meszaros's representations as described above, at the plaintiffs' direction, on or about July 7, 2005, the sum of $187,544.56 – the

purported "Net Account Value" of the plaintiffs' JPR account, not including the securities that defendant Meszaros stated would be transferred directly by JPR to Penta Cycle – were wire transferred by JPR to the plaintiffs' account at Bank of America, formerly Fleet Bank ("Fleet"), and on or about July 11, 2005, that amount, and an additional $100,000.00 provided by the plaintiffs, for a total of $287,544.56, was wire transferred by the plaintiffs from their account at Fleet to their Penta Cycle account.

59.     In or about July 2005, defendant Meszaros faxed an agreement entitled, "Advisory Agreement", which, *inter alia*, established Penta Cycle as the plaintiff's investment advisor and provided Penta Cycle with discretion to engage in the purchase and sale of securities on behalf of the plaintiffs, which agreement was signed by plaintiff Katherine Maurer Fox on behalf of the plaintiffs (the "Penta Cycle Agreement").

60.     Pursuant to the Penta Cycle Agreement, defendants Meszaros and Penta Cycle had discretionary authority to trade securities with respect to the plaintiffs' Day Trading account and controlled the plaintiffs' account.

61.     Pursuant to the Penta Cycle Agreement, "instructions of [Penta Cycle] to [the plaintiffs] or the Custodian with respect of investments shall be made in writing or orally and confirmed in writing as soon as practicable thereafter, and [Penta Cycle] shall instruct all brokers executing orders on behalf of the Account to forward to [the plaintiffs] or the Custodian copies of notices of all transactions promptly after execution."

62.     The plaintiffs never received from defendant Penta Cycle instructions, confirmations or notices of transactions after execution.

63.     The plaintiffs never received from defendant Penta Cycle account statements advising them of the net account value, account activity, equities purchased and sold, and assets of the account.

64.     The plaintiffs, on many occasions between July, 2005 and November, 2006, requested such account statements from defendant Meszaros.

65.     In response to the plaintiffs' requests, Meszaros stated that Penta Cycle would be issuing quarterly account statements and assured the plaintiffs that their account was increasing in value as a result of the Day Trading engaged in by Penta Cycle with respect thereto.

66.     During conversations that defendant Meszaros had with one or both of the plaintiffs after the Penta Cycle account was opened, Meszaros represented, in substance, that that the Day Trading being engaged in by defendants Meszaros and Penta Cycle on the plaintiffs' behalf was realizing profits and that the value of the plaintiffs' account was increasing in value.

67.     As a result of defendant Meszaros's representations set forth in ¶65-6 above, and all prior representations of the defendants as hereinabove set forth, on about January 19, 2006, the plaintiffs provided defendant Penta Cycle with an additional sum of $100,000.00 for Day Trading in the plaintiffs' account.

68.     On or about July 14, 2006, defendants Meszaros and Penta Cycle sent an e-mail to the plaintiffs advising that their account had generated $20,026.68 for the period April 3, 2006 through June 30, 2006, leaving a "current redemption value" of $520,693.00.

69.     On or about October 10, 2006, defendants Meszaros and Penta Cycle sent an e-mail to the plaintiffs advising that their account had generated $19,526.00 for the period July 30, 2006 through September 29, 2006, leaving a "current redemption value" of $540,200.12.

70.     As a result of defendant Meszaros's representations set forth in ¶¶68-9 above, and all prior representations of the defendants as hereinabove set forth, on or about October 19, 2006, the plaintiffs provided defendant Penta Cycle with an additional sum of $100,000.00 for Day Trading in the plaintiffs' account.

71.     At the time defendant Meszaros made the statements hereinabove described respecting the profitability and value of their account at Penta Cycle, the plaintiffs believed that the defendant Meszaros' statements were truthful and accurate.

72.     Upon information and belief, the aforementioned representations of defendant Meszaros set forth in ¶¶36-9,46,48,51-3,65-6 and 68-9 above were false, were known by defendant Meszaros to be false, and were made by Meszaros,  upon information and belief acting in concert with defendant Umansky, with the intention of deceiving the plaintiffs as to the actual value of their account, to hide losses and/or the conversion of funds, and to induce the plaintiffs to continue to deposit money into their account for the purpose of Day Trading, to not close their account and demand the return of their funds, and to not notify authorities and/or commence litigation with respect to the fraudulent actions and/or conversion of their funds.

73.     Unbeknownst to the plaintiffs at the time, on or about July 14, 2006, the current redemption value of their account at Penta Cycle for the period ending June 30, 2006 was not $520,693.00.

74.     Unbeknownst to the plaintiffs at the time, on or about October 10, 2006, the current redemption value of their account at Penta Cycle for the period ending September 29, 2006 was not $540,200.12.

75.     Unbeknownst to the plaintiffs at the time, the Day Trading being engaged in by defendants Meszaros and Penta Cycle on the plaintiffs' behalf was realizing losses and the value of the plaintiffs' account was decreasing in value and/or the defendants were converting portions of the plaintiffs' funds.

76.     As a result of the aforementioned representations of defendant Meszaros set forth in ¶¶36-9,46,48,51-3,65-6 and 68-9 above, the plaintiffs continued to deposit money into their Penta Cycle account as hereinabove described, did not close their account at JPR until they transferred their account to defendant Penta Cycle, did not close their account at Penta Cycle or demand the return of their funds until they learned of the investigation and indictment of defendant Meszaros by the United States Attorney for the Eastern District of New York, as hereinbelow described, did not notify authorities until they were interviewed by the United States Attorney's investigator, as herein below described, and did not, until the commencement of this action, commence litigation with respect to the fraudulent actions and/or conversion of their funds.

77.     On or about November 28, 2006, plaintiff Mitchell Fox learned from an investigator with the United States Attorney's Office for the Eastern District of New York, of an investigation by that office of defendant Meszaros.

78.     On or about November 28, 2006, the plaintiffs learned from an investigator with the United States Attorney's Office for the Eastern District of New York that on July

27, 2006, defendant Meszaros had been indicted on Conspiracy to Commit Wire Fraud and wire fraud counts in connection with Day Trading.

79.     On or about November 28, 2006, after learning that the plaintiffs had met with the investigator with the United States Attorney's Office for the Eastern District of New York, defendant Meszaros offered to refund to the plaintiffs the balance of their account at Penta Cycle, which he said was then $645,000.

80.     Unbeknownst to the plaintiffs at the time, the balance of the plaintiffs' account on or about November 28, 2006 was not $645,000.00.

81.     On or about November 29, 2006, the plaintiffs advised defendant Meszaros that they wanted to close their account immediately and wanted Meszaros and Penta Cycle to forward to them the full balance of their account.

82.     During his telephone conversation with the plaintiffs on or about November 29, 2006, defendant Meszaros said that the plaintiffs would receive the full balance of their account, $645,000.00, in cash, in seven to ten days.

83.     On or about November 29, 2006, defendant Meszaros sent the plaintiffs an e-mail advising that the balance of the plaintiffs' account as of April, 2006 was $481,873.00, and that the balance of their account as of July, 2006 was $520,666.00.

84.     Unbeknownst to the plaintiffs at the time, the balance of the plaintiffs' account as of April, 2006 was not $481,873.00 and the balance of their account as of July, 2006 was not $520,666.00.

85.     Between November 29, 2006 and December 12, 2006, the plaintiffs did not receive payment of the full balance of their account from defendant Penta Cycle.

86.    On or about December 12, 2006, in a telephone conversation, defendant Meszaros represented to the plaintiffs that rather than closing the plaintiffs' account, he had decided to shut down Penta Cycle.

87.    On or about December 12, 2006, in a telephone conversation, defendant Meszaros represented to the plaintiffs that Penta Cycle and JPR, at which, he said, the plaintiffs' funds were being held, could not return the $645,000.00 balance of the plaintiffs' account to the plaintiffs until they had received approval from the NASD to do so.

88.    On or about December 12, 2006, defendant Meszaros sent an e-mail to the plaintiffs stating, *inter alia*, that, since "Penta is a substantial client of JPR", JPR requested Penta Cycle to "adhere to standard operating procedure" with respect to the redemption by the plaintiffs of the balance of their account and forwarded to the plaintiffs an e-mail from defendant Umansky, stating:

> Due to the size of the redemption request, JPR will not be able to process the request until the start of the new quarter.  By agreement, your request would not be processed for a minimum of ninety days.  However, we will make every attempt to accommodate your needs.  In addition, because your request represents a material change in our net capital, we will have to notify and may need permission from the NASD to withdraw the funds.  If such permission is needed, we will keep you up to date with the progress of your request.

89.    On or about December 13, 2006, defendant Meszaros sent an e-mail to the plaintiffs stating, *inter alia*, that he would be following-up daily as to the progress of the redemption of the plaintiffs' account and that, "As to the security of your funds; [sic] they will remain in cash until redemption", and forwarded an exchange of e-mails between defendants Meszaros and Umansky wherein, *inter alia*, defendant Meszaros

complaint                                          17

purports to ask defendant Umansky to provide more substance as to the timing of the transactions and safety of the plaintiffs' funds, asks for help in "comforting" the plaintiffs, and one in which defendant Umansky advises defendant Meszaros that he will "notify the NASD on the first business day in January. I can not speak to the speed of the bureaucracy of the NASD. I will keep you up to date with the progress of your request."

90.     On or about January 5, 2007, defendant Meszaros represented to plaintiff Katherine Maurer Fox that he was preparing to wire transfer the sum of $645,000.00 as full reimbursement of all funds in the plaintiffs' account;  that the plaintiffs would have the money in seven to ten days;  and stated that when he had told the plaintiffs on or about November 29, 2006, that they would have the money in seven to ten days, he had been mistaken.

91.     On or about January 9, 2007, defendant Meszaros sent an e-mail to plaintiff Mitchell Fox stating that $645,000.00 was the correct amount of the funds in their account.

92.     On or about January 12, 2007, defendant Meszaros sent an e-mail to plaintiff Mitchell Fox stating that he had e-mailed defendant Umansky regarding the estimated time for the transfer of the funds and was awaiting a reply and assuring plaintiff Mitchell Fox that "all is being done to expedite the process to the extent that we are able to."

93.     On or about January 16, 2007, defendant Meszaros sent an e-mail to plaintiff Mitchell Fox stating, *inter alia,* that he had spoken directly with defendant Umansky, that Umansky is "also being harassed by the same investigators as you are", that the harassment from the investigators may have caused delay in the procedures of

the NASD, that the NASD does not normally give status updates, just confirmations of completed procedures and that,

> while it is under no legal obligation to do so, JPR will continue to attempt to expedite this process. I have every reason to believe that I have the full attention and cooperation of JPR in this matter, but apparently everyone's patience is being tested by the tactics of the investigators.

Defendant Meszaros included e-mails between himself and defendant Umansky requesting an update and Umansky's statement, in substance, that they have to be patient, that the NASD works on their own schedule.

94.    On or about January 17, 2007, in a telephone conversation, defendant Meszaros represented to the plaintiffs' attorney, *inter alia,* in substance, that the balance of the plaintiffs' account was, in fact, $645,000.00 and that the proceeds are being held in cash; that defendant Penta Cycle had entered into a joint broker office agreement with defendant JPR and that permission from the NASD was necessary before Penta Cycle could withdraw from the agreement and return the balance of the plaintiffs' account to the plaintiffs; that you can only notify the NASD at the end of a quarter, so that the NASD in this case could only have been notified after the quarter ending December 31, 2006; that the request was made on the first business day in January, 2007; that documentation was supplied by JPR and/or Penta Cycle, to the NASD, at the NASD's request, and that they must await confirmation from the NASD before they can release the funds; and reiterated that the plaintiffs' money was safe and secure and that the only question is when, but not if, the plaintiffs would be paid.

95.    During his telephone conversation with the plaintiffs' attorney, defendant Meszaros was requested, and agreed, to provide the plaintiffs' attorney with all written

complaint                                      19

communication between Penta Cycle, JPR and the NASD concerning this matter, the termination of any such joint broker office agreement and the payment to the plaintiffs of the balance of their account.

96.     During his telephone conversation with the plaintiffs' attorney, defendant Meszaros claimed, for the very first time, that the plaintiffs were shareholders in Penta Cycle.

97.     On or about January 17, 2007, the plaintiffs' attorney demanded that defendant Meszaros produce written documentation of the existence and location of the plaintiffs' $645,000.00 and proof of any ownership interest that the plaintiffs had, at any time, in Penta Cycle.

98.     Defendant Meszaros never provided the plaintiffs with daily updates as to the progress of the redemption of the plaintiffs' account, or any communication between Penta Cycle, JPR and the NASD concerning any joint broker office agreement, the termination of such agreement, the return to the plaintiffs of the balance of their account, documentation of the existence and location of the plaintiffs' $645,000.00, or any documentation evincing an ownership interest by the plaintiffs in Penta Cycle.

99.     On or about January 18, 2007, the plaintiffs demanded of defendants Meszaros and Penta Cycle the remittance of the sum of $645,000.00 by the end of business on Friday, January 18, 2007.

100.    On or about January 19, 2007, defendant Meszaros represented to the plaintiffs' attorney that he does not have in his possession or control the information requested by the plaintiffs' attorney and that he would make it available as soon as he receives it.

101.   Defendants Meszaros and Penta Cycle never produced the requested documents.

102.   On or about January 22, 2007, the plaintiffs demanded of defendants Umansky and JPR remittance of the sum of $645,000.00 by January 23, 2007.

103.   No portion of the said $645,000.00 has been accounted for by the defendants or paid to the plaintiffs.

104.   Upon information and belief, the aforementioned representations of defendant Meszaros set forth in ¶¶79,82-3,86-96,100 above were false, known by defendant Meszaros to be false, and were made by defendant Meszaros, upon information and belief acting in concert with defendant Umansky, with the intention of deceiving the plaintiffs as to the actual value of their account, to hide losses and/or the conversion of funds, and to induce the plaintiffs to not notify authorities and/or commence litigation with respect to the fraudulent actions and/or conversion of their funds.

105.   At the time defendant Meszaros was representing that the balance of the plaintiffs account, in the sum of $645,000.00, was being held in cash, that sum was not held, in cash or otherwise, by the defendants.

106.   Upon information and belief, the permission of the NASD was not required to return the balance of the plaintiffs' account.

107.   Upon information and belief, no requests were made by any of the defendants to the NASD for permission to return to the plaintiffs the balance of their account.

complaint                                        21

108.   Upon information and belief, defendants Meszaros, JPR and Umansky, acting in concert with one another, converted portions of the plaintiffs' funds when the plaintiffs maintained their account at JPR.

109.   Upon information and belief, the defendants, acting in concert with one another, converted the plaintiffs' funds that were to have been held by Penta Cycle in an account at JPR and/or JPR's clearing broker, Southwest and utilized for Day Trading for the plaintiffs' benefit.

110.   Upon information and belief, in or about July, 2005, defendant Meszaros agreed to transfer $1,050,000.00 to JPR in exchange for 2,100 shares of JPR preferred stock issued to Penta Cycle, which included the funds received from the plaintiffs, and on or about July 14, 2005, Meszaros transferred said funds from the Penta Cycle account to a JPR account.  These funds were subsequently sent via wire transfer from the JPR account to an account in the name of JPR at Southwest.  The funds were later used by defendant Meszaros and other JPR employees to trade securities.

111.   Upon information and belief, each of the $100,000.00 investments provided to defendants Meszaros and Penta Cycle, on or about, respectively, January 19, 2006 and  October 19, 2006, was never transferred to a securities trading account or used for Day Trading on the plaintiffs' behalf.

112.   Upon information and belief, defendant Meszaros spent part of the said January 19, 2006 and October 19, 2006  $100,000.00 investments and transferred the rest of the funds to other bank accounts.

113.   Upon information and belief, in or about and between December 23, 2005 and October 4, 2006, JPR sent intrabank funds transfers totaling approximately $142,500 from a JPR account that were deposited into a Penta Cycle account.

114.   Upon information and belief, defendant Meszaros spent part of the said $142,500 and transferred the rest of the funds to other bank accounts.

115.   Upon information and belief, in or about and between July, 2005 and January, 2007, defendant Meszaros (a) made unauthorized withdrawals from the Penta Cycle account, into which account all of the plaintiffs' investments as hereinabove set forth were deposited, which withdrawals  were used to pay, among others, a former day trader and Meszaros's civil and criminal attorneys;  (b) transferred additional funds from the aforementioned Penta Cycle account to a personal account at JP Morgan Chase, to a bank account in the name of Meszaros' wife, Kirsten Meszaros ("Kirsten"), and to an account in the name of "Livestreet" at JP Morgan Chase, which was controlled by Meszaros;  and (c) made mortgage payments from the Kirsten Meszaros account relating to property located at 44 Highland Road, Glen Cove, New York, which was owned by his wife, Kirsten.

116.   Upon information and belief, defendant JPR provided daily accountings to defendants Penta Cycle and Meszaros stating the balance, or the purported balance, of Penta Cycle's account at JPR, which should have included the assets in the plaintiffs' Penta Cycle account.

117.   On or about September 21, 2004, a customer initiated an arbitration against defendant Umansky alleging breach of contract, negligence, margin calls,

breach of fiduciary duty, misrepresentations and churning, and damages of $630,000.00.

118.    On or about January 30, 2007, the NASD was notified that the claimant in the aforementioned arbitration had settled his claim against Umansky.

119.    The aforementioned arbitration was disposed of on March 9, 2007.

120.    Upon information and belief, some of the plaintiffs' funds were used, *inter alia*, by defendants Umansky and/or JPR to pay arbitration awards or settlement amounts, and to invest in a new business opportunity.

121.    On or about April 23, 2007, the plaintiffs again demanded of the defendants payment of the sum of $645,000.00, with interest, by April 30, 2007.

122.    No portion of said $645,000.00 has been paid.

123.    On or about May 31, 2007, a superseding indictment was handed up against defendant Meszaros in the United States District Court, Eastern District of New York, which indictment included two (2) counts of wire fraud in connection with the plaintiffs' Day Trading account, as well as counts respecting other victims.

## AS AND FOR A FIRST CLAIM (against all defendants)

124.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123 above, as if more particularly set forth at length herein.

125.    Commencing in or about September, 2002 and continuing through and including the present, the defendants, individually and, upon information and belief, acting in concert with one another, did unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, employ manipulative and deceptive

practices and contrivances in connection with the purchase and sale of securities, by (1) employing devices, schemes and artifices to defraud, (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and (3) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the investing public, and the plaintiffs' in particular, all in violation of 15 U.S.C. §78j(b) and Rule 10b-5 thereunder.

126.   At all times relevant hereto, defendant JPR was responsible for defendant Meszaros's actions under the theory of *respondeat superior*.

127.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, for which sum the defendants are jointly and severally liable to the plaintiffs, together with interest as provided by law and the costs of this action.

## AS AND FOR A SECOND CLAIM (against all defendants)

128.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123 and 125 through 127  above, as if more particularly set forth at length herein.

129.   By reason of the foregoing, the defendants have committed common law fraud.

130.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, for which sum the defendants are jointly and severally liable to the plaintiffs, together with interest as provided by law and the costs of this action.

## AS AND FOR A THIRD CLAIM (against all defendants)

131.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127 and 129 through 130 above, as if more particularly set forth at length herein.

132.   The defendants, individually and, upon information and belief, acting in concert with one another, misappropriated the monies and other assets of the plaintiffs, as aforesaid, and unlawfully converted and misappropriated the plaintiffs' funds to the use and benefit of themselves.

133.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, for which sum the defendants are jointly and severally liable to the plaintiffs, together with interest as provided by law and the costs of this action.

## AS AND FOR A FOURTH CLAIM (against all defendants)

134.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127, 129 through 130 and 132 through 133 above, as if more particularly set forth at length herein.

135.   The defendants had a duty to handle the plaintiffs' accounts with due care and diligence and to act with good faith toward the plaintiffs and in the plaintiffs' best interest.

136.   Defendants JPR and Umansky had an obligation to act with due care and diligence in adequately supervising its employees including, without limitation, defendant Meszaros.

137.    The defendants had the obligation to exercise reasonable care, utmost good faith, integrity and loyalty in managing the plaintiffs' account and engaging in transactions on the plaintiffs' behalf, and in reporting the status of their account to the plaintiffs.

138.    The defendants owed a fiduciary duty to the plaintiffs.

139.    In or about March 2006, defendant Meszaros was arrested on a complaint alleging conspiracy to commit wire fraud and in or about August, 2006, defendant Meszaros was arraigned on an indictment in the United States District Court, Eastern District of New York, for conspiracy to commit wire fraud and wire fraud charges in connection with Day Trading.

140.    The defendants never advised the plaintiffs of defendant Meszaros's indictment prior to the plaintiffs having been advised of such by an investigator for the United States Attorney's office.

141.    By reason of the foregoing, the defendants breached their fiduciary duty to the plaintiffs.

142.    By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, for which sum the defendants are jointly and severally liable to the plaintiffs, together with interest as provided by law and the costs of this action.

## AS AND FOR A FIFTH CLAIM (against defendant Penta Cycle)

143.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127, 129 through 130, 132 through 133 and 135 through 142 above, as if more particularly set forth at length herein.

144.   Defendant Penta Cycle expressly and implicitly agreed to provide the plaintiffs with true and accurate statements of their account.

145.   Pursuant to the Penta Cycle Agreement, defendant Penta Cycle was obligated to provide the plaintiffs with instructions of Penta Cycle with respect to investments and copies of all transactions promptly after execution.

146.   Defendant Penta Cycle breached its contractual obligations to the plaintiffs.

147.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, together with interest as provided by law and the costs of this action.

### AS AND FOR A SIXTH CLAIM (against defendants Umansky and JPR)

148.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127, 129 through 130, 132 through 133, 135 through 142 and 144 through 147 above, as if more particularly set forth at length herein.

149.   Defendant Meszaros's acts were committed in furtherance of Umansky's and JPR's business and were within the scope of Meszaros's employment.

150.   Defendant Meszaros was engaged generally in the business of JPR and his actions were reasonably necessary or incidental to Meszaros's employment.

151.   Defendants Umansky and JPR could have reasonably foreseen defendant Meszaros's acts.

152.   At all times relevant hereto, defendants Umansky and JPR were responsible for defendant Meszaros's actions under the theory of *respondeat superior*.

153.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, together with interest as provided by law and the costs of this action.

## AS AND FOR A SEVENTH CLAIM (against defendant Umansky)

154.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127, 129 through 130, 132 through 133, 135 through 142, 144 through 147 and 149 through 153  above, as if more particularly set forth at length herein.

155.   At all times relevant hereto, defendant Umansky, directly or indirectly, controlled defendant Meszaros.

156.   Defendant Umansky did not act in good faith and, directly or indirectly, induced the act or acts, or some of them, described above.

157.   As a result of the foregoing, defendant Umansky is liable as "control person", pursuant to  15 U.S.C. §78t(a)

158.   By reason of the foregoing, the plaintiffs have been damaged in an amount to be determined at trial, but not less than $645,000.00, together with interest as provided by law and the costs of this action.

## AS AND FOR AN EIGHTH CLAIM (against all defendants)

159.   Plaintiffs repeat, reiterate and reallege each and every allegation set forth in ¶¶1 through 123, 125 through 127, 129 through 130, 132 through 133, 135 through 142, 144 through 147, 149 through 153 and 155 through 158  above, as if more particularly set forth at length herein.

complaint                                         29

160.   The wrongful acts described above are morally culpable and were actuated by evil and reprehensible motives.

161.   The defendants are guilty of intentional misconduct aimed at the plaintiffs and upon information and belief, other customers.

162.   The defendants' conduct overall, and defendant Umansky's and JPR's conduct in failing to supervise defendant Meszaros, was willful, reckless and wanton in its indifference to, and total disregard of, their wrongful actions with respect to the plaintiffs' account.

163.   By reason of the foregoing, the plaintiffs respectfully request that they be awarded punitive damages in an amount to be determined at trial, but not less than $1,000,000.00.

WHEREFORE, the plaintiffs demand judgment against the defendants as follows:

(a)   on the first through seventh claims, damages in an amount to be determined at trial, but not less than $650,000.00, for which sum the defendants should be jointly and severally liable to the plaintiffs, together with interest as provided by law and costs;

(b)   on the eighth claim, punitive damages in an amount to be determined at trial, but not less than $1,000,000.00; and

complaint                                          30

(c)    for such other and further relief as to the court seems just and proper.

## JURY DEMAND

Pursuant to Fed R. Civ. P. 38(b), the plaintiffs demand a trial by jury.


**LAW OFFICES OF BART J. EAGLE , PLLC**

/s/Bart J. Eagle
By:  Bart J. Eagle, Esq. (BJE-6634)
(A Member of the Firm)
Attorneys for the Plaintiffs
250 West 57th Street, Suite 1619
New York, New York  10107
(212) 586-0052